## BENNETT *v.* FORD.

VENUE.—*Change of.*—*Rule of Court.*—An application for a change of venue on the ground of objections to the judge was filed on the fifth day of the term, and before the issues were completed. The cause had been docketed for trial on the second day of the term. The application was refused on the ground that there was a rule of court which provided, that "application for a change of venue will not be entertained or allowed, unless the same is made on or before the cause is docketed for trial; nor after the party making the same has applied for a continuance, which has been overruled."

*Held,* that the change of venue was properly refused.

PROMISSORY NOTE.—*Duress.*—No recovery can be had upon a note which the maker was induced to give either by duress of his person or to regain possession of his property unlawfully withheld.

SAME.—*Ignorance of the Law.*—It is not a good defence to a suit on a promissory note, that the defendant gave the note in ignorance of the law, believing himself to be liable for an injury done by his runaway team, when he was not so liable.

NEGLIGENCE.—A team of horses attached to a wagon, in consequence of a fright received in the street of a city, ran away and collided with and injured the plaintiff's carriage, without any fault or negligence on the part of the owner of the team.

*Held,* that the latter was not liable for the injury.

From the Warrick Circuit Court.

*A. L. Robinson,* for appellant.

*Parrett & Wood,* for appellee.

BUSKIRK, J.—This was an action by the appellee against the appellant, upon a promissory note for seventy-five dollars, executed by the appellant, and payable to the appellee.

The appellant answered in two paragraphs. The first was, that the note was executed without any consideration.

A demurrer was sustained to the second paragraph, and thereupon the appellant took leave to amend, and filed a substituted answer, numbered three, which is as follows:

"Par. 3. The defendant, for further answer herein, says that he signed the said instrument of writing in the complaint described, without any consideration and under the following circumstances: That on the day of the date of the said writing, this defendant was temporarily in the city

Bennett *v.* Ford.

of Evansville (his residence being in Warrick County, Indiana) with his team of two horses and a wagon, which were harnessed and were standing on Main street of said city, and that while so standing his horses became scared and frightened by a large canvass sign which was hanging and swinging in the air entirely across and over said street, and nearly over said team ; and being so scared and frightened, they suddenly started to run, and did run up Main street (this defendant at the time having hold of the lines and endeavored to stop them, but could not), and at the distance of about two hundred and fifty feet from where they started they accidentally ran against the plaintiff's buggy, which at the same time was in the same street in the possession of the plaintiff, and broke and injured the same. And this defendant further avers, that the said team became scared and frightened and ran away as aforesaid, and did the injury aforesaid, without the fault, negligence, or wrongful act of this defendant, and against his consent and his efforts to stop the said team after they had started to run; and this defendant further avers, that almost instantly after the collision and injury aforesaid, the plaintiff procured a police officer of said city, and ordered said officer to arrest this defendant, and take him into custody; and in pursuance of said order, the said police officer seized the person of this defendant in a violent manner, and in the presence of the plaintiff, peremptorily ordered the defendant to remain there, and that he should not take his team away, nor should he leave that place until he had paid the plaintiff all damages; and that the plaintiff and the said police officer did detain him and his team in close custody on the said street at that place, and refused to permit him to leave that spot, until a citizen of Evansville interposed and verbally became responsible that, if released, this defendant would not run away; and this defendant further avers, that the plaintiff instantly demanded of this defendant the sum of six hundred dollars for said injury, when he knew the same did not exceed the sum of seventy-five dollars; and that afterward he lessened his claim to two hundred and

twenty-five dollars; and that finally this defendant obtained the judgment of two carriage-makers as to the actual amount of said damage, who fixed the same at seventy-five dollars. And he further avers, that the plaintiff would not consent that this defendant should leave the said city, or take his team away, until he had given the said note; the plaintiff threatened to institute proceedings at law against him, defendant, either under the ordinance of said city, or otherwise, and that he gave the said note by compulsion and against his will, and in entire ignorance of the law of the State, or of the ordinances of said city, and in utter ignorance of his rights in the premises, and to be at liberty to leave said city with his team and return home; and that said note was given for no other or different consideration, and this he is ready to verify."

A demurrer was overruled to the above paragraph of answer, but no cross error has been assigned on such ruling.

The appellee replied to the first and third paragraphs of the answer by a general denial.

At this stage of the proceedings, the court overruled the application of the appellant for a change of venue from the judge, and the question is properly reserved by a bill of exceptions.

The cause was submitted to a jury for trial, and resulted in a verdict for the appellee.

The appellant moved the court for a new trial, for the following reasons:

1st. The verdict is contrary to law.

2d. The verdict is not sustained by the evidence.

3d. The court committed error in refusing to give the instructions to the jury asked by the defendant, and which are numbered 2, 3, 6, 7, and 8.

4th. The court committed error in giving the instructions to the jury numbered *b*, *c*, *d*, and *e*.

5th. The court committed error in refusing to permit the defendant to testify to the fact that the canvass sign swing-

ing across Main street was the cause of frightening defendant's team.

6th. The court committed error in refusing to hear the testimony of Isaac S. French and Wm. Selby.

7th. The court erred in refusing the defendant's application for a change of judges.

Which motion the court overruled, and rendered a judgment on the verdict, to which the defendant excepted, and prayed an appeal to the Supreme Court.

The error assigned is based upon the refusal of the court to grant a new trial.

The first question discussed by counsel is the refusal of the court to grant a change of venue. The affidavit was sufficient in form and substance, if presented in time. The application was made on the fifth day of the term, and before the issues were settled, or the cause was called for trial. The application was refused upon the ground that there was a rule of court which provided, that " application for a change of venue will not be entertained or allowed, unless the same is made on or before the day the cause is docketed for trial ; nor after the party making the same has applied for a continuance, which has been overruled."

The appellant then proved by the clerk of said court, that such rule of court had never been printed or published, but had been entered upon the order book of said court; and that all the civil causes on the docket at that term, numbering one hundred and five, were docketed for the second day of the term. The counsel for appellant then filed their affidavit, to the effect that they had no knowledge of the existence of such rule until after they had made their application for a change of venue in the present case.

It is insisted by counsel for appellant, that the above rule of court is void for being repugnant to the laws of this State. The validity of such a rule has been sustained by many decisions of this court. *Redman* v. *The State*, 28 Ind. 205 ; *Galloway* v. *The State*, 29 Ind. 442 ; *Whittem* v. *The State*,

36 Ind. 196; *Truitt* v. *Truitt*, 38 Ind. 16; *The Jeffersonville,* *etc., R. R. Co.* v. *Hendricks*, 41 Ind. 48.

We proceed to inquire whether the court erred in refusing to charge the jury as requested by the appellant.

The second instruction asked and refused was: "If it appears from the evidence that the defendant was induced to give this note either by duress of his person, or to regain possession of his property unlawfully withheld, the same is of no force, and the plaintiff cannot recover."

The instruction asked was pertinent to the evidence in the cause.

The appellant testified as follows: "Soon after the collision, a crowd gathered around, and a policeman came up, and the plaintiff just behind him, supported on either side by two men; and the policeman seized me with both hands in a violent way, by my coat collar, and notified me that I could not leave the place, nor take away my property, until I had paid all damages; this was all said and done by the order and in the presence of the plaintiff. I submitted to the arrest, and they held me there a short time, when two citizens interposed, and became verbally responsible for me by assuring the policeman that if I could be permitted to go and put up my horses, I would not run away. I was released from arrest in this way."

Again, he testifies: "I had to give this note to have permission to leave the city. I did not give it voluntarily and freely."

Again: On being asked by plaintiff's counsel, what was to prevent him from going to Setchell's stable and getting his team and going home, and why he did not do it, he answered: "Because those men had pledged their word for me that I would not run away if released, and I would not prove false to them; I did not sign that note willingly; I did not offer to give the plaintiff seventy-five dollars; I did not propose to give my note for seventy-five dollars; Ford told me that he would not let me leave the city unless I gave my note for that amount, which I did to get a chance to go home."

"A contract made by a party under compulsion is void; because consent is of the essence of a contract, and where there is compulsion there is no consent, for this must be voluntary." 1 Pars. Con. 392, 5th ed. After noticing the English law of duress, the same author lays down this general principle: "These distinctions, however, would not now probably have a controlling power in this country; but where the threat, whether of mischief to the person or the property, or to the good name, was of sufficient importance to destroy the threatened party's freedom, the law would not enforce any contract which he might be induced by such means to make."

The principle involved in the instruction under examination was fully considered, and decided adversely to the appellee, in two recent cases in this court. *The Lafayette, etc., R. R. Co.* v. *Pattison*, 41 Ind. 312; *The Town of Ligonier* v. *Ackerman*, 46 Ind. 552.

Instruction number 3, asked by the defendant and refused by the court, contains the proposition, that if the defendant gave this note in ignorance of the law, believing himself to be liable for that injury, when he was not, he can not be held liable in this suit.

The authorities are not entirely uniform upon the principle of law contained in the above instruction; but the law seems to be settled adversely to the appellant in this State. *Bond* v. *Coats*, 16 Ind. 202; *Jenks* v. *Lima Township*, 17 Ind. 326; *Martin* v. *Stanfield*, 17 Ind. 336; and the two cases above cited in 41 and 46 Ind.

Appellant requested the court to give the following instruction, numbered 6, which was refused:

"That although it may have been proved that the defendant left his team in the street in violation of the ordinance of the city of Evansville, yet, if the jury shall be satisfied from the evidence that the defendant's team would not have been frightened nor have run off but for the sign suspended over and across the street, and that said sign was the real and primary cause of the damage done to the plaintiff's prop-

erty, the plaintiff cannot recover that damage from the defendant, but he should sue the owner of the sign."

We think the above instruction was correctly refused. It left entirely out of view the question of whether the appellant exercised due and ordinary care and prudence.

The seventh and eighth instructions asked and refused were as follows:

"No. 7. That if the jury shall be satisfied from the evidence, that the plaintiff sustained the injury without the negligence or wrongful act of the defendant, the plaintiff cannot recover, that is, if said note was given as compensation for said injury.

"No. 8. If the jury shall be satisfied from the evidence that the injury done to the plaintiff's carriage was the result of an accident, such as frequently happens in the crowded streets of a city, and that the note was given to the plaintiff in consideration of such accident, and for no other consideration, they will find for the defendant."

It will be convenient to consider, in connection with the above instructions asked by appellant, instructions *b* and *c*, given by the court of its own motion, which are as follows:

" *b*. If the owner of a team driving it or stopping it on a street or highway, permits or suffers his team to run away and do injury to another person or his property, the owner of the team is liable to the person injured for the injury done ; as between the owner of this team and the man who sustained the injury, the owner of the team must bear the loss.

" *c*. If the jury believe from the evidence, that the note sued on was given for damages sustained by plaintiff, in consequence of the defendant's team running away and breaking plaintiff's buggy, then the plaintiff is entitled to recover the amount of the note and interest."

The instructions refused and those given fairly present the question of whether the appellant is liable for the damages sustained by the appellee, if the appellant was without fault, and the injury resulted from an unavoidable accident. There

has been, and still is, much confusion in the authorities bearing upon the question stated. According to the early English cases, the fault or negligence of the defendant had no bearing upon the question of his liability, but he was held liable for an injury which resulted from inevitable danger and unavoidable accident. The modern English decisions have, to some extent, relaxed the rigor of the old rule, but there is much conflict between the English and American rulings. In the very recent case of *Brown* v. *Collins*, in the Supreme Court of New Hampshire, reported in vol. 13, N. S., of the American Law Register, on page 364, the English and American authorities are reviewed with great ability and clearness, and the rule as laid down by Mr. Chief Justice SHAW, in *Brown* v. *Kendall*, 6 Cush. 292, is adopted as the rule in this country. The rule is stated by Judge SHAW as follows : " We think, as the result of all the authorities, the rule is correctly stated by Mr. Greenleaf, that the plaintiff must come prepared with evidence to show either that the intention was unlawful, or that the defendant was in fault; for if the injury was unavoidable, and the conduct of the defendant was free from blame, he will not be liable. 2 Greenl. Ev., sec. 85 to 92; *Wakeman* v. *Robinson*, 1 Bing. 213. If, in the prosecution of a lawful act, a casualty purely accidental arises, no action can be supported for an injury arising therefrom." *Davis* v. *Saunders*, 2 Chit. 639; Com. Dig., Battery, A. (Day's Ed.) and notes ; *Vincent* v. *Stinehour*, 7 Vt. 62; *James* v. *Campbell*, 5 Car. & P. 372 ; *Alderson* v. *Waistell*, 1 Car. & K. 358.

We cite, as fully supporting the rule above stated, the following recent cases : *Losee* v. *Buchanan*, 51· N. Y. 476; *Parrot* v. *Wells*, 15 Wallace, 524; *Roche* v. *The Milwaukee G. L. Co.*, 5 Wis. 55 ; *Eastman* v. *Amoskeag, etc., Co.*, 44 N. H. 143.

The seventh instruction should have been given.

The eighth instruction was properly refused, for the reason that the word accident, as used therein, was not qualified by the word unavoidable, and because it did not contain the words,

after the word accident, " the defendant being without fault.'"

The instructions *b* and *c*, given by the court, were clearly erroneous, as they rendered the defendant liable, although the injury complained of was the result of an unavoidable and inevitable accident growing out of an act that was lawful, and in the performance of which the defendant was without blame or fault.

The question as to the negligence of the appellant is presented by the evidence in the record, for the appellant on the trial testified: " I was preparing to return home, and drove up in front of Keller & White's drug store to get two small packages, threw the lines down on the pavement as far out toward the store as they would reach, and went into the front part of the store, got the packages, and returned directly back toward my team, and when in the front door and not above five or six feet from my lines, the horses started to run ; I dropped the packages, and seized the lines before they had been dragged from the pavement, and tried to stop the horses, and held on to them until there was danger of being dragged under the wheels," etc.; " my team was gentle, and never had run away before. When my team started, I was near enough to control it, under ordinary circumstances, by my voice."

We are of opinion that the court erred in the exclusion of evidence offered by the appellant.

A Mr. White had testified as to the accident, and had given it as his opinion that the sign of Mr. Lyon, across the street, had caused the team to run off.

The defendant offered his own testimony to corroborate that of Mr. White as to the canvass sign's being the cause of the team's running away, and also to testify that he did not know of the existence and danger of the sign until the time of this occurrence.

Again, the defendant offered to prove by two of his neighbors, Isaac S. French and William Selby, " that the defendant's team was good and gentle, and that the defendant was a prudent, careful hand with a team, and that he understood

his business; which the court refused to hear, to which the defendant excepted," etc.

We think the evidence offered tended to elucidate the question of whether the injury was caused by an unavoidable accident, or the fault of the appellant or the person who placed the sign across the street. It appears from the evidence, that the sign occupied the larger part of the street, which was about eighty feet wide, and that it was ten feet wider than its length, and hung about fifteen feet above the heads of the horses. Mr. White testified, that it was his impression that the persons connected with the store started to pull the sign across the street after the appellant had driven up.

Counsel for appellee assume the following positions in reference to the answer setting up a want of consideration for the note sued on:

"If the acts of the appellant were such as would have entitled the appellee to damages in a suit without the note —and that is the case made by the testimony in the record— then there was a valid and sufficient consideration for the note, and the judgment is right.

"Again, it appears from the testimony, that the appellant freely and of his own will, with full knowledge of the facts and in consideration of the facts, and to avoid all further trouble or litigation, made the note, and voluntarily delivered it to appellee, in full settlement and adjustment; and this, of itself, was a good and sufficient consideration for the note, and an admission of his liability."

The above propositions may be correct as abstract propositions of law; but, as we have seen, the court in its instructions withdrew from the jury the questions of whether the appellant would have been liable without a note, and whether the execution of the note upon a compromise would have constituted a sufficient consideration for such note. In instruction *c*, the court charged the jury, that "if the jury believe from the evidence that the note sued on was given

VOL. XLVII.—18

for damages sustained by plaintiff in consequence of the defendant's team running away and breaking the plaintiff's buggy, then the plaintiff is entitled to recover the amount of the note and interest."

It is very obvious to us, that the vital questions in the case were not submitted to the jury, and that in their deliberations they did not pass upon the substantial merits of the case. The ends of justice imperatively demand a new trial.

The judgment is reversed, with costs; and the cause is remanded for a new trial, in accordance with this opinion.