Brooks v. Berryhill.

## BROOKS *v.* BERRYHILL.

DURESS—CONTRACT.—Where a man is arrested out of this State, upon criminal process sued out in another State, upon a charge of embezzlement, and is brought to this State, in the custody of an officer of such other State, and is taken to his wife, who resides here, and is the owner of real estate here, and she is induced, by his importunities, and the threats of the officer to take him back to such other State, and her desire to secure his discharge from imprisonment, to execute a mortgage upon her real estate, in which her husband joined, to secure the payment of the money alleged to have been embezzled by him, and such mortgage was executed by her unwillingly, such mortgage will be void, because it was executed under duress, the husband having been at the time held in illegal custody, by an officer of another State, under a writ there sued out, which was no justification to him here.

APPEAL from the *Jefferson* Common Pleas.

PERKINS, J.—Suit by *Moses Brooks* against *Alexander S. Berryhill* and *Rebecca G. Berryhill*, for the foreclosure of a mortgage. Complaint in the usual form.

*Alexander S. Berryhill* made default. *Rebecca G. Berryhill*, who is the wife of *Alexander*, was permitted to appear and defend in her own right, the mortgage being upon her separate property.

Her answer consisted of several paragraphs, but they set up, in substance, two grounds of defence: 1. A special *non est factum*, verified by oath. 2. Duress.

There was judgment below for Mrs. *Berryhill.* The facts are shortly these:

*Alexander S. Berryhill* was a clerk and salesman for *Moses Brooks* in *Cincinnati, Ohio,* while his family residence was in *Madison, Indiana.*

*Berryhill* became a defaulter, as clerk and salesman, to the amount of several hundred dollars. Mr. *Brooks* filed an affi-

davit against him, in the Police Court of *Cincinnati,* for embezzlement, and procured a warrant for his arrest. He was arrested by *Hazen,* the Chief of Police of *Cincinnati,* and while under arrest, it was arranged between *Brooks, Hazen* and *Berryhill* that, if the latter would go to *Madison,* in custody of the officer, and procure a mortgage on a farm owned by his wife, called *Beechwood,* to secure the amount of his defalcation, he was to be discharged from further prosecution. The visit to *Madison* was made, the mortgage obtained, *Berryhill* was discharged, the affidavit and writ against him destroyed, the prosecution abandoned, and *Berryhill* then enlisted in the army and left for the South.

The above is a general statement. But it is proper that a more particular statement should be made of the evidence touching the manner in which the mortgage was obtained from Mrs. *Berryhill.* It appears to have been in the night of the 28th of *January,* 1860. The following is Mrs. *Berryhill's* testimony :

" She said that she was the wife of said *Alexander S. Berryhill;* that said mortgage was executed under the following circumstances, to-wit : On the evening of the execution of the mortgage, said *Berryhill,* who then resided at *Cincinnati,* came to her house and came up stairs to her room, and told her he was in difficulty with the plaintiff; that he wanted her to sign a paper which would relieve him of the difficulties; that she said to him she would do so, only that she could not make a mortgage on the said farm, *Beechwood,* the land described in the mortgage; that she thought that she could not mortgage said land; that said *Alexander* told her it was not a mortgage at all, and she relying on that statement, went down stairs and signed the paper then lying on the table in the room, without looking at it, or reading it, or being told what it was, or knowing what it was, only believing that it was not a mortgage, and that she would not have

Brooks *v.* Berryhill.

signed it had she known that it was a mortgage; that she was crying, and in great distress, and did not notice who were there, as it was dark. Her husband has only been here once since making said mortgage, and then only a short time."

Mr. *Hazen*, the police officer, says he went to the house of *Berryhill* on the night of the 28th of *January*, 1860, in *Madison*; that he went in company with *Berryhill* and a notary public, who had a prepared mortgage with him. There was no other person at the house except Mrs. *Berryhill*. He and the notary went into the parlor, and the mortgage was laid down upon a table. Mrs. *Berryhill* was up stairs; her husband went up after her; he returned without her. "The second time he went up, he brought her down. The first that I saw of her, she was coming down stairs. She stopped at about half the way down. She was crying, and did not want to come down any further. Her husband remarked to her that it was all right, and to come down and sign it. She asked who those men were; he replied to her that one was his friend, and the other was the officer. She came into the room. The notary showed her where to put her name. She threw down the pen and said she would not sign it, when her husband told her that it was all right, and if she did not sign it he would have to go with the officer, and perhaps to jail. She then signed it, and immediately dropped the quill, and went up stairs crying, having her handkerchief to her face. I had the embezzlement warrant in my possession, and I considered Mr. *Berryhill* under arrest till I got the mortgage. He knew I had the warrant, and I told him I should take him back to *Cincinnati* if the mortgage was not made. I had arrested him at the Burnet House in *Cincinnati*. I had no warrant or authority from any *Indiana* officer to arrest or hold him."

It is not clear that the foregoing evidence does not estab-

lish the answer of *non est factum.* If Mrs. *Berryhill* signed the mortgage under the false representation and belief that it was an instrument of a different character, can it be said that she ever consentingly signed the mortgage? See *Awde* v. *Dixon,* 5 Eng. L. and E. Rep. 512; *Seeles* v. *The People,* 2 Am. L. Reg. (N. S.) 344, note. But however that may be, the defence of duress is well made out.

If a man voluntarily pays money under a mistake of law, he can not recover such money back. *Jenks* v. *Lima Township,* 17 Ind. 326. But if he pays money, illegally exacted, to effect a release of person or goods, he may recover back money thus paid. *Ibid.*

So if he executes an instrument to free himself from false imprisonment, actual or threatened, he may avoid the instrument. *Foshay* v. *Ferguson,* 5 Hill. (N. Y.) Rep. 154.

So, if he executes a deed to obtain deliverance from imprisonment under legal process maliciously sued out. *Ibid.* Chit. Cont., 7 Am. Ed., p. 207, note.

And if husband or wife, or parent or child executes a deed to obtain deliverance of the one or the other from illegal duress, the instrument may be avoided. Chit. Cont. 208.

The case at bar falls within these principles. The husband, Mr. *Berryhill,* was held in illegal custody, at *Madison.* The *Cincinnati* writ was no justification to the officer in *Indiana,* beyond his jurisdiction. He threatened to take Mr. *Berryhill* out of the State, if the mortgage was not executed. Mrs. *Berryhill* signed the mortgage, unwillingly, through the influence of this threat.

And it is plain that a jury might well infer from the evidence that the criminal prosecution itself was gotten up simply for the purpose of extorting the mortgage.

*Per Curiam.*—The judgment below is affirmed, with costs.

*S. C. Stevens,* for the appellant.

*C. E. Walker* and *Geo. W. Richardson,* for the appellee.