WILLIAM RHODES, Assignee, etc., *vs.* EDWARD WEBB.

November 30, 1877.

President and Cashier with Unrestricted General Authority to Control all Financial Matters of Bank—Such Officers have no Power to Use Property of the Bank in their Private Business.—Under general authority to the president and cashier of a bank, giving them entire control of all financial matters of the bank, unrestricted by any by-laws or rules of the board of directors or stockholders, they have no power to use the property of the bank in the private business or for the individual benefit of one of themselves.

Same—When Bank not Bound by Contract of Such Officers.—Under such general authority they cannot bind the bank by any contract to which they, or either of them, are parties.

Note of Director Held by Bank Purchased by President with Stock of Director—Liability of Director not Discharged until Such Transaction is Ratified by Bank.—W., a director of the bank, owed it a note of $1,000, and held $1,000 of its stock. T., the president, made an agreement with him to purchase the stock for himself, and to carry out this agreement the president received the stock from W., handed it to the cashier, instructing him to hold it in place of W.'s note, and to surrender the note to W., saying that he, the president, would pay the amount to the bank. The cashier received the stock, stamped the note paid, and surrendered it to W. *Held*, that the bank, there being no ratification of the transaction, was not bound by it, and that it did not discharge W.'s liability to the bank upon the note.

Appeal by defendant from an order of the district court for Ramsey county, *Simons,* J., presiding, refusing a new trial, and from a judgment of the said court entered in the said action, and tried by the said judge without a jury.

*Edward Webb,* for appellant.

*Williams & Davidson,* for respondent.

GILFILLAN, C. J.   Action on a promissory note executed by defendant to the Marine Bank, the assignor of plaintiff.

The defendant claims that when the note fell due it was satisfied, and he discharged from liability by reason of a transaction between himself and Turrell, the president of the bank, and the cashier.   The transaction is stated by the court below,

in its findings of fact, as follows: "That in the month of June, 1876, at St. Paul aforesaid, the said O. B. Turrell, for himself individually and for his own use and benefit, and not for or on account of, or on behalf of said bank, and without any authority-whatever from said bank, agreed to purchase of said defendant ten shares of the stock of said bank, of one hundred dollars each, which was then owned and held by said defendant, and to pay him therefor on the first day of July, then following; that on or about said first day of July, 1876, said Turrell, for the purpose of completing said purchase of said stock, and without any authority whatever from said bank, directed the cashier of said bank to surrender up and deliver the said note to said defendant, and to take the said stock and hold the same in the place of said note to said bank; that thereupon said defendant then and there delivered said stock to said Turrell, and said Turrell delivered the same to said cashier, and said cashier, without any authority whatever from said bank, received the said stock and delivered up said note to the said defendant, Edward Webb."

The note never was in fact paid either by defendant or any one else. At the time of this transaction Webb was a director of the bank. The finding of fact is fully sustained by the evidence, unless in reference to the authority in the premises of Turrell and the cashier. It appears from the evidence that the entire control of all financial matters of the bank were left with the president and cashier, without any restriction imposed by by-laws or rules adopted by the board of directors, or stockholders, prescribing their powers, and they were not required to report to the directors their discounting transactions. No report of this transaction was made to the directors, so there was no ratification of it, and it must stand, if at all, upon the authority of the president and cashier. This authority seems to have been full enough except so far as it was restricted by principles of law. The transaction, briefly stated, was an attempt by the president to use the property of the bank, this note, in his own private business,

in payment for a purchase made for his own benefit. A general authority to transact the business and manage the finances of the bank would not authorize such a use of its property. Nor do we see that the case of defendant is any way aided by trying to make out of it a satisfaction of the note by substituting for it the promise of Turrell to the cashier that he would pay to the bank the amount of the note; for general authority in the president and cashier to make contracts on behalf of the bank would be subject to the rule of law that an agent or trustee cannot bind his principal, or *cestui que trust*, by a contract made by him on behalf of his principal or *cestui que trust* with himself. General authority in those officers to make discounts would not authorize them to bind the bank by discounting their own notes. Such authority to the president of a bank to certify checks drawn on it does not extend to checks drawn by himself. *Claflin* v. *The Farmers' and Citizens' Bank*, 25 N. Y. 293. This restraint upon agents, and those occupying fiduciary positions, is essential to secure absolutely fair dealing and adequate protection to those whose interests are confided to them.

If we concede, then, the authority of the president and cashier to bind the bank by accepting the promise of one person in discharge of a debt owing to it by another, it would not extend to a case where they, or either of them in his own interest, was a party to the transaction; and such was this case. Turrell, and not the bank, was interested in the end sought to be accomplished by the arrangement. The attempt to substitute him as the debtor in the place of defendant was not made for the purpose of taking care of the interests of the bank, but to enable Turrell to make the purchase for himself of the stock held by defendant. And though neither the president nor the cashier, nor the defendant, appears to have had any evil intent, the transaction cannot be supported as against the bank.

The court below was correct in finding that there was no authority in the president or cashier to bind the bank by the

arrangement. As this want of authority depended upon rules of law applicable to the case, of course defendant was chargeable with knowledge of it.

The debt evidenced by the note was drawing interest. The debt set up as a counter claim, a general deposit in the bank, could not bear interest until a demand for payment. The court was right in allowing interest on one and not on the other.

The other exceptions do not relate to the authority of the officers to enter into the arrangement relied on as a defence, and they are, therefore, immaterial.

Judgment and order affirmed.