No. 8237.

## PECKHAM v. HENDREN.

PROMISSORY NOTE.—*Action by Remote Endorsee.—Consideration.—Duress. —Evidence.*—On trial of an action by an assignee, before maturity, against the maker, of a promissory note. payable at a bank. to the H. C. M. Company, or bearer, execution of the note being admitted, evidence that it was given for some wire clothes line, and in consideration of the cancellation of a contract to sell it, and that it was endorsed by the company to its president, who delivered it to plaintiff, did not sustain findings for the defendant, that it was executed under duress, or without consideration, or that its consideration had failed, or that the plaintiff was not an innocent holder.

SAME.—*Threatened Suit not Duress.*—The execution of a note to avoid an expensive lawsuit, threatened by the holder of an account, is not duress. Where one has the right and the law with him and his free-will, he can not claim to have yielded to the wrong, and that the court must assist him to a reclamation.

SAME.—*Officer of Corporation.—Imputable Knowledge.*—Knowledge is imputable to a corporation by the acts of its agent. but will not be imputed to an officer thereof in a transaction between him and the corporation, in which he is acting for himself and not for it.

SAME.—*Non-Resident Assignee.—Innocent Holder.—Circumstances of Execution.*—A non-resident assignee, for value and before maturity, of a note payable at a bank, has a right to assume that the note was valid and founded upon a valid consideration. and the law does not impose on him the burden of inquiring into the circumstances under which it was given.

From the Hendricks Circuit Court.

*L . M . Campbell,* for appellant.

*E . F . Ritter, L . C . Walker* and *L . Ritter,* for appellee.

MORRIS, C.—The appellant, who was the plaintiff below, sued the appellee upon a promissory note, executed by the latter and payable to the Hollow Cable Manufacturing Company, *or bearer*, for one hundred and four dollars and fifty cents, payable at the First National Bank of Danville, Indiana, with interest and attorneys' fees, on the 1st day of December, 1877. The note is alleged to have been assigned by endorsement to H. C. Preston, and by him delivered to the plaintiff before it became due.

The appellee answered the complaint in four paragraphs : First, the general denial; Second. Want of consideration, and that the appellant took the note with notice of the fact. Third. Failure of consideration in general terms, with notice on the part of the appellant; Fourth. That the note was obtained from the appellee by duress, of which the appellant had notice. The appellant replied to the answer by a general denial.

The cause was submitted to a jury who returned a general verdict for the appellee. The appellant moved the court in writing for a new trial, for the reason, among others, that the verdict was not supported by sufficient evidence. The motion was overruled. The error assigned is, the overruling of the appellant's motion for a new trial. The question principally discussed by counsel relates to the sufficiency of the evidence, which is set out in a bill of exceptions, to sustain the verdict. The execution of the note and the endorsements thereon were admitted. The appellee testified in his own behalf substantially as follows :

"About the 1st day of May, 1877, one Newton, who claimed to be acting for the Hollow Cable Manufacturing Company, came to my house with a piece of wire, and said he wanted to make me an agent to sell this wire. I told him that I did not want to do it; that I did not want to fool with it. Newton said he would give me one hundred feet of the wire as a sample, so that I could see that it would not rust; that he

wanted to leave that much with me, and if I did not sell it at the end of a year he would come and take it away. He said he did not want me to be an agent unless I could sell. I said, 'Will you give me the one hundred feet of it if I do not sell a foot?' He said he would; that I could sell at five per cent. and he would give me half of what could be made. The agreement was to sell in the township. We then went to the house. I asked my wife if she wanted a clothes-line. She said she did. We talked it over. I told Newton that I was afraid of such a man as he was; that there were so many of them around that I was afraid of such men. He said he knew such men were going round, but that was no reason why he should be a swindler. He said he wanted me to introduce the wire into the county, and that it should not cost me a cent; that if I did not sell some of it, and make something on it, he would come and get it at the end of a year. He said some had sold it, come back after more, and made a fortune out of it. I told him he could leave the wire if he wanted to. My wife said she could see nothing wrong about it; that I could make one hundred feet of the wire, and let him leave it if I wanted it. I then went into the agreement. Newton gave me one hundred feet of the wire, and if I sold none I was not to be out a cent. Some wire was afterward sent to me, but the freight was not paid on it, and I did not go after it. Some three weeks after this, another man called on me. I think his name was Browers. He said he had an old account against me. I asked him what the account was for. He said it was for clothes-lines. I told him I had never bought any clothes-lines, and would not pay the account. He said he knew nothing about it; that I might have been swindled; that the account had been sent to him for collection. I told him I could not and would not pay it. He said if I could not pay it, he would take my note; that he had taken notes of others, which he showed me. He said he would sue me if I did not settle and give a

note, and use these men as witnesses against me ; that a suit would cost a good deal ; that they would take me somewhere away south, and that it would cost me $200, and that I had better save that. I told my wife that it would ruin me to be sued ; that I had not the money to pay, and had better give my note. I gave the note ; I don't deny that. My daughter's name is on it. I asked the man to go with me to Stilesville to get advice. I saw Captain Roberts. He said the man was a swindler and he would not pay him a cent. I never saw the man afterwards. Saw nothing of the note until notified by the bank to pay it.''

Upon cross-examination, the appellee admitted that the agreement made by him and Newton, the agent of the payee of the note, had been reduced to writing and executed in duplicate ; that he took one and Newton the other ; that when Browers called upon him for pay, he had the agreement retained by Newton, and that, when he executed the note, Browers cancelled the agreement by tearing his name from it.

The appellee also read in evidence a circular, signed by H. C. Preston, president of the payee of the note in suit, describing the composition and construction of the clothesline, and representing it to be the best article of the kind manufactured in the country. The appellee also read in evidence the answer of the appellant to interrogatories filed in the cause. From these answers, it appears that about the 15th of August, 1877, H. C. Preston, to whom the note in suit had been assigned by endorsement, transferred the same to the appellee by delivery in part payment for a house and lot in Hornellsville, N. Y., worth $2,000, conveyed by him to said Preston ; that the appellee lived in Wyoming county, N. Y. ; that he was a farmer, and that he took the note without any notice or knowledge of any vice or defect in it ; that he knew Preston was the president of the Hollow Cable Manufacturing Co., but that he did not know for what

the note had been given; that Preston guaranteed the payment of the note and the cost of its collection; that he had no interest in the Hollow Cable Manufacturing Co.; that he knew nothing of the maker of the note, and made no inquiry as to his ability to pay it, and that for that reason he took the guaranty by Preston.

The appellee then read in evidence the endorsements on the note, as follows:

"Pay to H. C. Preston, Hollow Cable Manufacturing Co.:

"For value received, I hereby guaranty the collection of the within note and interest, and all legal costs incurred in collecting the same.                    H. C. PRESTON."

The appellant moved the court to strike out so much of the testimony of the appellee as related to the contract made by him with Newton, the agent of the payee, in relation to the clothes-line, on the ground that the same had been reduced to writing, and that a duplicate had been taken by him which was not shown to have been lost or destroyed, or its absence in any way accounted for. The court overruled the motion. Upon this evidence the appellee rested.

The appellant read in evidence his own deposition, which was in substance the same as his answers to the appellee's interrogatories. The testimony does not show or tend to show, that the appellee was at the time he executed the note in suit under duress. There seems to have been, according to his testimony, some disposition on the part of Browers, the agent who procured the note, to excite some apprehension in the mind of the appellee by the expression of his opinion as to the result and expense of the suit which he threatened to institute, if the matter was not settled.

There was no violence used or threatened; no talk of imprisonment; no menace; no putting in fear. The law wisely assumes that men of ordinary capacity and intelligence have firmness enough to resist the influence of such efforts and expressions of opinion as were used by Browers. There was

Peckham *v.* Hendren.

nothing in what he said or did calculated to seriously alarm any one.

"No one can be heard to say that he had the right and the law with him, but he feared his adversary would carry him into court, and that he would be unlawfully fined and imprisoned; and that being thereby deprived of his free-will, he yielded to the wrong, and the court, must assist him to a reclamation." *Town Council of Cahaba* v. *Burnett,* 34 Ala. 400. *Bush* v. *Brown*, 49 Ind. 573; *Coffelt* v. *Wise*, 62 Ind. 451.

There was no proof tending to establish a failure of consideration. It appears from the appellee's own testimony, that he entered into a written contract with the payee of the note for the sale of a clothes-line, of its manufacture; that this written contract was executed in duplicate, he retaining one and the agent of the payee taking the other. He did not produce this contract on the trial, nor give any excuse for not doing so. He states the conversation between himself and the agent, Newton, from which it may be inferred that he had been misled and imposed upon. It also appears, that soon after this contract was made the payee sent him a quantity of wire clothes-line, which he never used. Soon after the wire was sent to him, another agent of the payee called upon him with the contract which he had executed and delivered to the agent, Newton, and insisted that he was liable to the payee of the note for the wire sent. After some hesitation the appellee executed the note in suit, in settlement of the claim thus preferred against him. The written contract previously made was thereupon cancelled.

What this written contract was we do not know, unless it embraced the agreement between the parties testified to by the appellee. If it did, then so much of the appellee's testimony as related to that agreement should have been stricken out upon the motion of the appellant. If the contract embraced other matters, then its cancellation was a

sufficient consideration for the note in suit. But waiving these questions, and admitting that there was some testimony in the case tending to show a want of consideration for the note, there was no testimony tending to show that the appellant or his guarantor Preston, had at the time of the endorsement of the note by the payee to Preston or its delivery by Preston to the appellant, any notice or knowledge of such defect.

Preston was the president of the payee, and the appellant knew it. The acts of Newton, who made the contract with the appellee, as the agent of the Hollow Cable Manufacturing Co., were its acts. The law imputes to it knowledge of what he said and did in the transaction of its business. But Newton was not the agent of Preston, the president of the company, nor were his acts the acts of Preston; nor would the latter, simply because he was the president of the company, be chargeable with notice of the acts of Newton when transacting business for, and as the agent of, said company. Notwithstanding the fact that Preston was president of the company, it had the right to sell, and he to buy, any note which belonged to it; and, in buying the note in suit, Preston would not be acting as its president, but for himself. A corporation officer, who acts avowedly for himself in a transaction with the corporation, is regarded as a stranger to it, dealing with it as if he held no official relations to it. Nor will his knowledge be imputed to the corporation in such a transaction. *Hayward* v. *The Pilgrim Society*, 21 Pick. 270; *Merrick* v. *The Peru Coal Co.*, 61 Ill. 472; *Stratton* v. *Allen*, 16 N. J. Eq. 229; *Twin-Lick Oil Co.* v. *Marbury*, 91 U. S. 587; *Rhodes* v. *Webb*, 24 Minn. 292; *Gallery* v. *National Exchange Bank*, 41 Mich. 169; *Winchester* v. *The Baltimore, etc., R. R. Co.*, 4 Md. 231; *The First National Bank* v. *Gifford*, 47 Iowa, 575. And, upon the same principle, knowledge imputed to the corporation by the acts and declarations of its agent in a transaction with

which its president is in no way connected, and of which he is in fact ignorant, will not be imputed to him in a transaction between him and the corporation, in which he is acting for himself, and not for the corporation.  Where a director or other officer of a corporation enters into relations by contract with it, as by procuring it to discount a note for him, he, *pro hac vice*, ceases to be the officer of the corporation, and it is not charged with his knowledge, nor will he be charged with knowledge which the law imputes to the corporation through the acts of other agents.  *The Seneca County Bank* v. *Neass*, 5 Denio, 329 ; *The Atlantic State Bank* v. *Savery*, 82 N. Y. 291.; *Lucas* v. *The Bank of Darien*, 2 Stew. (Ala.) 280 ; *Farmers, etc., Bank* v. *Payne*, 25 Conn. 444 ; *Barnes* v. *The Trenton Gas Light Co.*, 27 N. J. Eq. 33.  But, however this may be, the testimony shows that the appellant was an innocent holder of the note.  He gave value for the note, took it before it was due, without notice of any vice in it.

It is said that, as the payee lived in a distant State, the appellant should, before buying the note, have inquired into the circumstances under which it was given.  The law imposed upon him no such burden.  He had a right to assume that the note was valid, and founded upon a valid consideration.  *Riley* v. *Schawacker*, 50 Ind. 592 ; *Goodman* v. *Simonds*, 20 How. (U. S.) 343.  This case does not conflict with the case of *Zook* v. *Simonson*, 72 Ind. 83.

The judgment below should therefore be reversed.

Per Curiam.—It is ordered, upon the foregoing opinion, that the judgment below be in all things reversed, at the costs of the appellee.