No. 323.

DARLING *v.* HINES.

EXTORTION.—*Money Paid on Account of Alleged Criminal Prosecution.—Action to Recover.*—If a person is guilty of a crime, and upon being threatened with a criminal prosecution therefor pays money in order to suppress such prosecution and thus protect himself from punishment, he can not recover the money so paid. This is so even if the defendant in the civil suit had represented that a criminal case had been brought against the plaintiff by the prosecutor at the defendant's instance, which was untrue, and that if the money was not paid the defendant

Darling v. Hines.

would cause him " to be sent to the State prison," and if the money was paid the case would be dismissed.

SAME.—*Money Paid on Account of Alleged Civil and Criminal Actions.— Voluntary Payment.*—If a person is indebted to another in a small amount for property which it was claimed he had unlawfully taken from the other, and upon being told that a suit had been instituted to recover the value of the same, and that a criminal case was pending against him for the alleged larceny, both of which statements were untrue, he paid, without investigation of any sort, a sum largely in excess of the value of the property it was asserted he had stolen, a portion of which amount was to be paid, as he supposed, to the prosecuting attorney to dismiss the criminal case, he can not recover the amount so paid. If he was injured it was his own fault in not using ordinary prudence in the premises. It was not an involuntary payment, as he was not arrested or placed under restraint in any way, or intimidated by any attempted or threatened violence against his person.

From the Boone Circuit Court.

*S. M. Ralston* and *M. Keefe*, for appellant.

*C. S. Wesner* and *O. D. Wesner*, for appellee.

FOX, J.—This action was commenced in the Boone Circuit Court by the appellee against the appellant to recover a sum of money which he claims had been unjustly extorted from him by the appellant. The complaint was in one paragraph, to which a demurrer was filed by the appellant. This demurrer was overruled by the court and a proper exception taken. As the case will be reversed for the reason that the court below erred in overruling the demurrer to the complaint, it is necessary to set forth the material portions thereof in order that the point raised may be understood. The material allegations in the complaint are as follows:

" That on or about the 2d day of September, 1889, at the city of Lebanon, in the county of Boone, in the State of Indiana, the defendant accosted the plaintiff and said to him that he, the plaintiff, had taken from his (the defendant's) real estate in said county five wagon loads of manure, and that he, the said defendant, had consulted with one Charles M. Zion, prosecuting attorney for said county, and that said Zion had informed him that it was larceny, and that he, de-

fendant, had employed him, the said Zion, to institute two several suits against the plaintiff, one in his own behalf, and one a criminal prosecution for larceny, and that said suits were pending, and that if he, said plaintiff, did not give to him, said defendant, the sum of one hundred dollars for said manure, and the further sum of twenty-five dollars for fees that he had paid to him, the said Zion, he, the defendant, would send the plaintiff to the State prison of the State of Indiana, and would prosecute the said civil suit against him, said plaintiff, but that if this plaintiff would pay him, said defendant, the sum of one hundred and twenty-five dollars, he, the defendant, would have both of said cases dismissed; that this plaintiff believed that such suits had been instituted, and believing that said suits were pending, and relying on the statement of the defendant as to the pendency of said suits, civil and criminal, and believing that he, the said defendant, had paid the said Zion twenty-five dollars, and relying on said statement he did give the said defendant one hundred and twelve dollars on the terms and for the consideration that said cases were to be dismissed and for no other or different consideration; * * * that in truth and in fact there were no such suits pending; that said statements were false and fraudulent, and made for the purpose of blackmailing, cheating and defrauding this plaintiff, and were made to this plaintiff for the purpose of obtaining the said sum of one hundred and twenty-five dollars and for no other or different purpose."

An answer in three paragraphs was filed to the complaint, to which the plaintiff replied, thus putting the case at issue. The case was submitted to and tried by the court, without a jury, resulting in a judgment in favor of the plaintiff in the sum of $112. A motion for a new trial was filed and overruled.

The appellant assigns the following errors for the consideration of this court:

VOL. 5.—21

1st. The court erred in overruling the demurrer to the second amended complaint.

2d. The court erred in overruling the motion for a new trial. The complaint also set forth is denominated in the record as " the second amended complaint," and is the one referred to in the first error assigned.

As a consideration of the first error assigned will determine the case, it is unnecessary to refer to or discuss the motion for a new trial.

The theory of the complaint appears to be that the appellant extorted money from the appellee by representing to him that he had employed the prosecuting attorney of his county to bring two suits against him, one civil, the other criminal, for taking five wagon loads of manure from lands owned by appellant; that such suits had been actually brought and were pending; these representations being coupled with a threat upon the part of the appellant that if the appellee did not pay him money he, appellant, would send him " to the State prison for larceny " for taking the manure, and attended with the promise upon the part of the appellant that if he, the appellee, would pay the money demanded he, the appellant, would procure " both suits to be dismissed."

We are not aware of any recognized legal theory that will uphold the complaint as stating a valid cause of action. It can not be upheld upon the theory alone that the representations made were " false and fraudulent," for they were made concerning matters and under circumstances which the court will not regard as forming a proper subject for relief. Every practitioner knows, or ought to know, that using the words " false and fraudulent " in a pleading accomplishes no purpose unless the facts to which they are applied justifies the charge. There is no allegation in the complaint that the appellant did not take from the appellee's land " five wagon loads of manure " without right. There is no allegation that he was not guilty of larceny. There is no allegation

that he was not indebted to the appellant for the manure he had taken. The cause of action which the appellee attempted to set forth in his complaint, hinged upon the statement made by the appellant that he had employed the prosecuting attorney to bring two suits against the appellee, one civil and the other criminal, for taking the manure. If the appellee had taken the manure and was indebted for its value (and this is not denied), the appellant had a right to bring a civil suit for the debt. If the appellee was guilty of larceny, he was bound to know that the appellant could not legally employ the prosecuting attorney to bring a "criminal suit" against him for the crime; that it would be the duty of such prosecuting attorney to proceed against him promptly in behalf of the State of Indiana without employment; that if such prosecutor, as such, accepted employment from the appellant to aid him in any scheme that he had against the appellee it would be official corruption pure and simple, and such as would render him utterly unworthy the commission he held.

If the appellee was indebted to the appellant for the manure, he knew at the time that the extent of such indebtedness was the value of the manure and no more; that if a civil suit was brought such value would constitute the measure of damages. It is not charged in the complaint that the appellee is feeble-minded. We must, therefore, infer that he is a person of ordinary mental capacity, capable of exercising ordinary judgment, prudence and discretion in his business relations. Manifestly, a representation that a civil suit had been brought against him for the trifling value "of five wagon loads of manure" ought not to have influenced the appellee, as a man of ordinary intelligence, to the extent of doing the things charged in the complaint. He had a full knowledge of all the facts and circumstances under which the manure was taken. He was not misled nor imposed upon in anywise in this respect, therefore when he paid the money he paid it understandingly, without making

any inquiry whether a civil suit had been brought or not. If he was injured it was his own fault in not using ordinary prudence and caution in the premises, and being so the law will leave him where it finds him.

The representation made that a "criminal case" had been brought against the appellee by the prosecutor at the instance of the appellant, coupled with the threat that if the money was not paid, the appellant would cause him "to be sent to the State prison," and this utterance, with the promise that if the money was paid the appellee would cause such case to be dismissed, in no wise aid the cause of action in withstanding the demurrer.  If the appellee was guilty of the crime of larceny, he certainly knew it, for he had a knowledge of all the facts of the transaction constituting the charge.  If guilty, he was bound to know that when he paid money in order to suppress a prosecution for the crime, he was compounding a felony, a thing in itself felonious.  He was further bound to know that the appellee had no power or authority to control or dismiss the "criminal case."  If he was conscious of his innocence, then the charge made ought not to have influenced him as a man of ordinary firmness and prudence, as we must presume him to be.  If the complaint is sustained, it must be upon grounds other than that of "false and fraudulent representations."

Did the making of the false representation that a "criminal suit" was pending against the appellee, coupled with the threat that unless the money was paid the appellant "would send him to the State prison," under the circumstances, constitute duress.  If an innocent person, upon being threatened with criminal prosecution or false imprisonment, entertains well grounded fears that such threats will be carried into execution, and being reasonably influenced thereby, executes a contract, or pays money by reason thereof, the law will protect him ; but if a person is guilty of a crime, and upon being threatened with a criminal prosecution therefor, pays money in order to suppress such prosecu-

tion, and thus protect himself from punishment, there is no principle upon which he can claim protection from the courts, such a transaction being itself criminal.

The authorities in which the doctrine of duress occasioned by threats of criminal prosecution has been discussed are numerous, and not entirely harmonious.

In the case of *Peckham* v. *Hendren*, 76 Ind. 47, the court quotes with approval the following language from *Town Council of Cahaba* v.*Burnett*, 34 Ala. 400:

" No man can be heard to say that he had the right and the law with him, but he feared his adversary would carry him into court, and that being thereby deprived of his free will, he yielded to the wrong, and the court must assist him."

A person who is conscious of being in the right should not decide his case against himself by tamely yielding to the demands of another who is in the wrong and then ask the court to protect him. Especially is this true when such person is under no physical restraint, when no violence is used or threatened against his person, but who stands upon an equal footing with his adversary, with the means of ascertaining the truth easily within his grasp. He must use a reasonable degree of diligence in the premises or abide the results. *Town of Ligonier* v. *Ackerman*, 46 Ind. 552.

The cases of *Reynolds* v. *Copeland*, 71 Ind. 422, and *Bennett* v. *Ford*, 47 Ind. 264, to which we have been referred, are clearly distinguishable from the case at bar. In the former case it was charged that the notes and mortgage involved in the suit were obtained by the defendants, who, in so doing, " threatened to arrest, imprison, and send plaintiff to State prison for the crime of rape; did threaten to beat and wound him; did refuse to permit the plaintiff to confer with an attorney or to consult his friends; and that the said defendant and one William Reynolds did, by acts, threats and gestures, induce the plaintiff to believe that they were armed with deadly weapons, and that they did put the plaintiff in great fear." The court in the opionion says: " There

appear to have been such threats and means used as were calculated to produce fear, and thus overcome the will, and make the act of the party, the result, not of his judgment, but of fear." It would have been strange indeed if the court had determined otherwise upon the facts stated.

The case of *Bennett* v. *Ford, supra,* was decided upon the authority of *Town of Ligonier* v. *Ackerman,* 46 Ind. 562, and *Lafayette, etc., R. R. Co.* v. *Pattison,* 41 Ind. 320. In the former case it was said in the opinion, "that a mere apprehension of legal proceedings is not sufficient to make a payment compulsory, and that where there is a threatened prosecution, the payment must be made under protest." In the latter case it is said : "By duress, in its more extended sense, is meant that degree of severity, either threatened or impending, or actually inflicted, which is sufficient to overcome the mind and will of a person of ordinary firmness." To this doctrine no exception can be taken. In reading the above cases it will readily be seen that they were properly decided upon the facts involved.

The doctrine of duress is discussed in the following cases : *Hines* v. *Board, etc.,* 93 Ind. 266 ; *Adams* v. *Stringer,* 78 Ind. 175 ; *Tucker* v. *State, ex rel.,* 72 Ind. 242 ; *Line* v. *Blizzard,* 70 Ind. 23 ; *Colglazier* v. *Town of Salem,* 61 Ind. 445 ; *Modlin* v. *Northwestern T. P. Co.,* 48 Ind. 492 ; *Town of Princeton* v. *Vierling,* 40 Ind. 340 ; *Snyder* v. *Braden,* 58 Ind. 143 ; *Barnes* v. *Stevens,* 62 Ind. 226 ; *Brooks* v. *Berryhill,* 20 Ind. 97 ; *Harmon* v. *Harmon,* 61 Me. 227 ; *Mascolo* v. *Montesanto,* 23 Atl. R. 714 ; *Dausch* v. *Crane,* 19 S. W. R. 61 ; *Doyle* v. *Rector, etc.,* 31 N. E. R. 221.

In this case it is shown by the complaint that the appellee made no effort whatever to protect himself. He was not arrested nor placed under restraint in any way. He was not intimidated by any attempted or threatened violence against his person. He was simply "accosted" in the streets "of the city of Lebanon, in the county of Boone," and told by the appellant that he had taken "five wagon loads of

Darling v. Hines.

stable manure" belonging to the appellant; that the prosecuting attorney had advised the appellant that he was guilty of larceny in so doing; that two suits, one criminal and the other civil, had been brought and were pending against him for so doing, and that if he "didn't settle" he would be punished. The appellant does not deny the taking of the manure. If he took the manure, he knew the facts and circumstances under which it was taken. The court has knowledge that the ₒcity of Lebanon is the county seat of the county of Boone. When the appellant was " accosted,'' as charged in his complaint, he was within a few steps of the court house. By going there he could have easily ascertained whether the statement of the bringing of the suits was true or false. He made no effort so to do, but blindly accepted the statement as true, "and settled the cases" without knowing whether the suits had been brought or not, without using any diligence whatever in the premises. The facts and circumstances recited by the plaintiff in his complaint should not have induced the plaintiff, as a reasonably cautious and prudent man, to pay the money, and do not convince the court that such payment should be treated as an involuntary one. It is not the province of the court to make or supervise the contracts of individuals. If they fail to exercise proper care and good judgment and make bad bargains, the court will not listen to their complaints, for the machinery of the courts will not be set in motion to aid those who fail to aid themselves.

The judgment is reversed at the costs of the appellee, with instructions to the court below to sustain the demurrer to the complaint.

Filed Oct. 26, 1892.