BANK OF MONTICELLO, Respondent, vs. DOOLY, imp., Appellant.

*February 24—March 11, 1902.*

*Promissory notes: Statutes: Banks and banking: Cashier's note: Accommodation indorsers: Authority of cashier: Discounts: Consideration.*

1. Under sec. 1675—50, ch. 356, Laws of 1899, providing that every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value, the introduction in evidence of a negotiable note establishes *prima facie* that it was given for value, and that every maker and indorser appearing thereon have signed for value.

2. General authority to a bank officer to make discounts does not authorize him to bind the bank by discounting notes to which he is a party.

3. The directors of a bank, on examining its loans, found a note payable to D. and signed by its cashier as a joint maker. On the cashier's attention being called thereto, he stated that D. had agreed to indorse it, and D., having been called in, indorsed the note. *Held,* that when the note was found among the notes turned over by the cashier as cash or collateral, it was *prima facie* proof that the cashier had advanced the bank's money upon a note to which he was a party, and hence that the bank had not bought the note prior to the directors' meeting.

4. In such case D. having signed the note for the purpose of meeting requirements imposed by the bank's directors before they would consent to purchase the note, the original consideration advanced by the bank attached to the transaction, and it was immaterial that no money passed directly to D.

APPEAL from a judgment of the circuit court for Green county: B. F. DUNWIDDIE, Circuit Judge. *Affirmed.*

This is an action against the defendant *Dooly* and one Prisk upon a joint and several promissory note for $1,000, dated March 11, 1901, signed by one J. F. Sears (now deceased) and the defendant Prisk as makers, payable September 1, 1901, to the order of the appellant *Dooly,* and indorsed in blank by *Dooly.* The complaint is the ordinary complaint upon a promissory note against the maker and indorser. The defendant Prisk answered separately, but does not appeal from the judgment; hence it is not necessary to state his answer at length. The defendant *Dooly* answered separately, alleging that he had no knowledge or information as to the execution of the note, and that on the 11th of March, 1901, and up to the 20th of April, 1901, one J. F. Sears, now deceased, was the cashier of the plaintiff bank. Further answering, the defendant *Dooly* denies that he ever indorsed or delivered said note to the plaintiff for value or to procure credit, and alleges that he knew nothing of said note until the 20th of April, 1901, when the plaintiff represented to him that it owned said note, and that it would be necessary for the defendant to indorse the same in order to confer title on the plaintiff, and that upon such request, and for the sole accommodation of the plaintiff, the defendant *Dooly* indorsed said note for the purpose only of conferring title, and without receiving any consideration or value therefor. The action was tried before a jury. The plaintiff introduced the note and rested. Thereupon the defendant introduced the testimony of one Humiston, the vice-president of the plaintiff bank, and proved by him that Sears was cashier of the bank up to April 18, 1901, on which day a directors' meeting was held, and the loans of the bank were examined by the full board of directors; that among the notes held by the bank which were examined by the board was the note in question, signed by Prisk and Sears, but not then indorsed by *Dooly;* that he

(Humiston) called Sears' attention to the note, and Sears said that *Jim Dooly* has to sign that note. He said it was a three-cornered deal, and *Jim Dooly* has to sign it,—has to go on that note with us. Being asked what there was about the note that specially attracted his attention, he said, the size of the note, the amount of the note, and the signatures. The court then asked, "What is the purport of this testimony?" and Mr. Becker, defendant's attorney, replied, "I want to prove that Mr. Sears was requested by the officers of the bank to have *Mr. Dooly* come and indorse the note." Plaintiff's counsel then said: "We concede that *Mr. Dooly* was called in to go on this note." *Mr. Becker:* "Do you concede that he said it was a three-cornered affair?" *Mr. Jeffreys:* "It was a three-cornered affair." *Mr. Becker:* "All right." Defendant was then called on his own behalf, and said that he knew nothing of the note until the 19th or 20th of April, 1901, when he put his name on the back at the Bank of Monticello. Being asked at whose request, and whether he received any consideration for his signature, the court ruled that if the request was by Mr. Sears (who had been shown to be dead at the time of the trial), the testimony could not be received. Thereupon Humiston was again called, and it was shown by him that at the directors' meeting on the 18th of April he told Sears to call *Dooly* in and have him sign the note; that he did this because the directors did not consider the note good without *Dooly's* signature, and he told Sears that if *Dooly* signed it would be all right; that he never saw any money handed to any one for the note; and that the cashier, Sears, turned the note over to the bank as cash or collateral. One Breylinger, who has been cashier of the plaintiff bank since April 18, 1901, was called as a witness, and testified that *Dooly* signed the note in the bank on the 18th of April; that Sears was asked to have *Dooly* sign the note, and went out, and came back again with *Mr. Dooly,* and that *Dooly* came up to the desk, read it, wrote his name on the back, and handed it to

Mr Sears; that he did not know whether the bank ever paid
*Mr. Dooly* or any other person any consideration for indorsing
the note.    The court rejected all testimony tending to show
that *Mr. Dooly* received no consideration at the time he signed
the note.   At the close of the evidence the court directed a ver-
dict for the plaintiff for the amount of the principal and in-
terest due upon the note.   The defendant made a motion for a
new trial upon the minutes of the court, which was overruled,
and judgment was entered upon the verdict, and the defend-
ant appeals.

For the appellant there was a brief by *J. M. Becker,* attor-
ney, and *J. L. Sherron,* of counsel, and oral argument by *Mr.
Becker.*

For the respondent there was a brief by *Colin W. Wright*
and *Fethers, Jeffris & Mouat,* of counsel, and oral argument
by *Mr. Wright* and *Mr. M. G. Jeffris.*

WINSLOW, J.    The court was plainly right in directing
a verdict for the plaintiff.    The note was a negotiable note.
When the plaintiff introduced it in evidence, it had made
*prima facie* proof that it was given for value, and that every
person whose signature appeared thereon had signed for value.
Negotiable Instruments Law (Laws of 1899, ch. 356, sec.
1675—50).    The defendant attempted to meet the case so
made by showing that *Dooly* did not sign the note until after
it had been purchased by the bank, and then that he received
no consideration for his signature.    But in attempting to
make this proof, he showed affirmatively that the note had
never been purchased or discounted by the bank until after he
put his signature thereon.    The note was signed by Sears, the
cashier.   It is not shown that Sears had authority from the
board of directors of the bank to discount notes.    Even had he
possessed such authority as to the notes of third persons, he
could not bind his bank by discounting his own note.    General
authority to a bank officer to make discounts does not author-

ize him to bind the bank by discounting notes to which he is a party. This limitation is absolutely necessary for the protection of the bank and the important interests which are intrusted to it by the business community. *Rhodes v. Webb,* 24 Minn. 292; Bolles, Bank Officers, §§ 161, 476, 494; 1 Morse, Banks, § 173.

When the directors of the bank examined its loans and discounts on the 18th of April, 1901, they found among the notes which the cashier turned over as cash or collateral the note in question. This is certainly *prima facie* proof that the cashier had advanced the bank's money upon the note. There is no proof to the contrary in the case, either received or offered; hence it must be considered as a fact. This being the fact, and it being the law that the cashier could not bind the bank by discounting his own note, it necessarily results that the bank had not bought the note prior to the directors' meeting, and that when the directors met on the 18th of April they could refuse to receive the note altogether, or they could require additional signatures before receiving it; and any one who signed for the purpose of· meeting such a requirement would be bound, upon the plainest principles, and it would be entirely unnecessary for any new consideration to proceed from the bank to such signer. His signature would be a part of the original transaction, and one of the conditions upon which, only, the bank consented to purchase the note at all. It appears without dispute that this was just what occurred in the case before us. The bank directors, finding the note among the bank's discounted notes for which money had been advanced, refused to accept it unless indorsed by *Dooly,* and *Dooly* indorsed it. The original consideration advanced by the bank attached to the transaction, and it is immaterial that no money passed directly to *Dooly.* Hence, irrespective of all questions of evidence, the judgment must be affirmed. Under the admitted facts, the judgment was right, and none of the evidence offered could affect the case, had it been received.

*By the Court.*—Judgment affirmed.