# PARKER ET AL. *v.* THE FIRST NATIONAL BANK OF FORT WAYNE.

[No. 8,599. Filed June 3, 1915.]

1. BILLS AND NOTES.—*Payment.—Recovery of Payment.—Cancellation of Note.*—On a complaint to recover money paid and to cancel a note executed by plaintiffs, alleging that a commission firm had arranged with defendant bank to advance money for live stock purchased for it by the plaintiffs, and in doing the business the bank required plaintiffs to make a draft on the commission firm for the amount advanced by the bank on each purchase, that plaintiffs did not understand that they assumed any liability by so doing, that on dishonor of one of the drafts the bank insisted on payment by plaintiffs and to that end held up the personal funds of plaintiffs, and that thereupon plaintiffs, under mistake as to their legal rights, paid part of the draft in cash and executed their note for the balance, no such mistake, fraud, duress or coercion was shown as would entitle plaintiffs

to the recovery of the money paid on such draft, or to a cancellation of the note executed for the balance.    pp. 192, 194.

2. PAYMENT.—*Recovery of Voluntary Payment.—Payment Under Mistake of Law.*—A voluntary payment can not be recovered even though the claim or demand paid was unjust or illegal, nor can money paid with full knowledge of all the facts and circumstances upon which it was' demanded, or with the means of such knowledge, be recovered on the ground that it was paid under the payor's mistaken belief that he was legally bound to pay it.  p. 193.

From Wells Circuit Court; *Wm. H. Eichhorn*, Judge.

Action by Sheldon B. Parker and another against The First National Bank of Fort Wayne.   From a judgment for defendant, the plaintiffs appeal.   *Affirmed.*

*Samuel M. Hench* and *Samuel R. Alden,* for appellants.

*Vesey & Vesey,* for appellee.

MORAN, J.—Appellants brought a suit to recover an indebtedness alleged to be due them from appellee, and to cancel a promissory note, calling for $300, held by appellee, which they had theretofore executed.   They were denied relief, and the note sought to be cancelled was reduced to judgment against them upon a cross-complaint, filed by appellee.   From this judgment an appeal has been prayed.

Errors relied upon for reversal are (1), error in sustaining appellee's demurrer to the amended third paragraph of appellants' complaint; (2), error in sustaining appellee's demurrer to appellants' amended third paragraph of answer to appellee's cross-complaint.

The facts alleged in the amended third paragraph of complaint and the amended third paragraph of answer addressed to appellee's cross-complaint do not differ materially.   Putting aside the irrelevant matter, the material facts alleged in each of the pleadings under consideration are: in the year 1905, appellants as partners, with their place of business at Huntertown, Allen County, Indiana, were engaged in buying live stock; and C. F. Pfeiffer and Sons, a commission firm of East Buffalo, New York, entered into an agree-

ment with appellants, whereby they were to purchase for C. F. Pfeiffer and Sons live stock, the necessary money to carry on the business, to be furnished by C. F. Pfeiffer and Sons, at appellee's bank, the live stock to be purchased in carload lots and shipped to C. F. Pfeiffer and Sons at East Buffalo, New York. Appellee, a corporation, engaged in a general banking business at Fort Wayne, obligated itself in the presence of Christian F. Pfeiffer, a member of the firm of C. F. Pfeiffer and Sons, and Sheldon B. Parker, a member of the firm of Parker and Simon, to furnish on account of C. F. Pfeiffer and Sons, on the request of appellants from time to time, the necessary money to pay for the live stock before the same was shipped to C. F. Pfeiffer and Sons at East Buffalo, New York; and from the time of entering into the agreement until October 28, 1908, appellants, under the agreement and arrangement, purchased and shipped to C. F. Pfeiffer and Sons a large quantity of live stock; appellee adopted for the purpose of its business with C. F. Pfeiffer and Sons, relative to the payment of funds to appellants for the use of C. F. Pfeiffer and Sons, a form of sight draft drawn by appellants on C. F. Pfeiffer and Sons for each payment, under the arrangement and agreement made, without intending to obligate appellants by reason of drawing such drafts. Appellants at appellee's request formally signed the drafts on receipt of such payments, without any intimation or suggestion by appellee that it expected appellants to assume any liability for such funds, nor were appellants ever informed by appellee until October 28, 1908, when the last of such drafts calling for $950 had been dishonored at Buffalo, New York, that it claimed appellants were responsible to it for any such funds. The amount of $950 was paid by appellants for a carload of live stock, which was shipped to C. F. Pfeiffer and Sons, who sold the same for $1,033. Sometime after the draft had been dishonored, appellee demanded payment of the same from appellants, and refused to cash two certificates of deposit held by appellants

representing personal funds in appellee's bank. Appellants in ignorance of their rights, and by reason of their personal funds being refused them by appellee, paid a part of this draft in cash, and executed their note in the sum of $300 for the balance. Appellee knew appellants were not liable for the payment of the draft but with a fraudulent intent asserted that they were liable, and refused the payment of their personal funds, held on deposit, with the intent of forcing them without consideration to pay the indebtedness of C. J. Pfeiffer and Sons. Appellants believed when they signed the drafts from time to time drawn on C. F. Pfeiffer and Sons, that it was appellee's method of doing business with C. F. Pfeiffer and Sons, and never knew until it demanded payment of the amount of the draft and refused to pay their individual funds on deposit, that it considered them obligated to pay the amount of the draft. They were ignorant as to whether they were liable, as claimed by appellee, and gave their note, supposing they were liable in some way, which they could not comprehend; and not until 1911, did they learn for the first time that they were not liable for the payment of the draft. Judgment was demanded by the complaint for the money paid to the bank in the sum of $650 and to cancel the note. The answer went to the entire cross-complaint that appellee take nothing thereby.

Appellee's cross-complaint, to which the answer was addressed, was predicated upon the $300 note and was in the usual form of a pleading based upon an obligation of this character.

Appellants contend that they were purchasing agents of live stock in the vicinity of Fort Wayne, Indiana, for C. F. Pfeiffer and Sons, which was a commission firm of 1. Buffalo, New York, and that the draft, which they were compelled to pay, a part in cash and a part by promissory note, was the debt of C. F. Pfeiffer and Sons, and that under the circumstances, they were entitled to recover back the money paid and have the note cancelled. It

will be observed that the complaint alleges that by the arrangements made between appellee and C. F. Pfeiffer and Sons, there was no intention on the part of appellee to look to appellants for the payment of the money advanced by it to pay for live stock shipped to C. F. Pfeiffer and Sons at East Buffalo, New York. That the signing of the drafts by appellants and drawn on C. F. Pfeiffer and Sons was the method adopted by appellee to reimburse itself for the money advanced for the purchase of the live stock. It will be further noticed by the allegations of the complaint that for over two years appellee advanced the money for each shipment of live stock to C. F. Pfeiffer and Sons, and that it was reimbursed for each shipment sent forward by a draft drawn by appellants on C. F. Pfeiffer and Sons. There came a time, however, on October 28, 1908, as disclosed by the complaint, when a draft calling for $950 was not paid by C. F. Pfeiffer and Sons, and upon learning of the nonpayment of the same appellee demanded payment of appellants and the same was paid by appellants in the manner heretofore mentioned. Irrespective of the alleged obligation on the part of appellee to furnish the money to pay for the live stock, without looking to appellants therefor, the relation of appellants to the transaction was such that unless the payment of the draft was through mistake, fraud, duress or coercion, they cannot recover the same back. *Lemans v. Wiley* (1884), 92 Ind. 436; *Darling v. Hines* (1892), 5 Ind. App. 319, 32 N. E. 109; *Town of Brazil v. Kress* (1876), 55 Ind. 14; *Colglaizer v. Town of Salem* (1878), 61 Ind. 445; *Lafayette, etc., R. Co. v. Pattison* (1872), 41 Ind. 312; *Town of Edinburg v. Hackney* (1876), 54 Ind. 83; *Ingalls v. Miller* (1889), 121 Ind. 188, 22 N. E. 995.

And it is likewise the law, that even though a claim or demand be unjust and illegal, and it is paid voluntarily, the one paying the claim or demand under such circumstances can not recover the same back. Like-

wise where money is paid with a full knowledge of all the facts and circumstances upon which it is demanded, or with the means of such knowledge, it can not be recovered back on the ground that the party supposed he was bound in law to pay it, when in truth he was not. *Lafayette, etc., R. Co.* v. *Pattison, supra; Hines* v. *Board, etc.* (1884), 93 Ind. 266; *Ingalls* v. *Miller, supra; Powell* v. *Bunger* (1881), 79 Ind. 468; *McWhinney* v. *City of Logansport* (1892), 132 Ind. 9, 31 N. E. 449; *Martin* v. *Stanfield* (1861), 17 Ind. 336; *Bond* v. *Coats* (1861), 16 Ind. 202.

Recurring again to the paragraph of complaint under consideration, it discloses no more when carefully analyzed than that the officers of the bank insisted on appel-

1. lants applying money they had on deposit with it to a discharge in part of the protested draft, to which their names were attached, and insisted that appellants execute their promissory note for the balance. Appellants were familiar with all the facts at the time and prior to the payment of the money and the executing of the note above mentioned. The note, a copy of which is made a part of the cross-complaint, was executed more than two years after the protesting of the draft. While the record is silent, indirectly appellants' brief discloses the note sued on in the cross-complaint to be a renewal of the original, but this does not strengthen appellants' case. In *Bond* v. *Coats, supra,* it was said: "There is no pretense that the defendant made the promise to pay, or the payment on the agreement, under any mistake as to the facts, or fraud in reference to the circumstances. He had full knowledge of them; but alleges he was mistaken as to his rights, in a matter in which he had constituted himself a judge in his own cause, and decided against himself. We are of opinion that the weight of authority is that he can not now be heard to reverse his own judgment."

Neither mistake, fraud nor coercion is sufficiently alleged in the complaint to warrant a recovery, and applying the

law to the facts, as disclosed by the entire paragraph of complaint, the payment of the money and the execution of the note were not involuntary. The trial court committed no error in sustaining the .demurrer to the amended third paragraph of complaint and to the third paragraph of answer addressed to the cross-complaint. Judgment affirmed.

NOTE.—Reported in 109 N. E. 75. As to what is and what is not duress, see 26 Am. Dec. 374. See, also, under (1) 30 Cyc. 1324; (2) 30 Cyc. 1298, 1313