## SCHLENSKER *v.* STATE OF INDIANA.

[No. 12,940. Filed March 29, 1928. Rehearing denied June 19, 1928. Transfer denied November 15, 1928.]

*Elliott, Weyl & Jewett,* for appellant.

*Arthur L. Gilliom,* Attorney-General, and *Lesh & Lowther,* for the State.

*Otto Gresham,* Amicus Curiae.

THOMPSON, J.—This is an action by appellant to collect from appellee a sum of money alleged to have been paid by the former to the latter through mistake and through fraudulent representations.

The complaint is in three paragraphs, the first paragraph being for money had and received; the second paragraph proceeds on the theory that there was an express promise on the part of the appellee to return to appellant that part of his deposit of $50,000 not required to pay his actual obligation to the state, said deposit of $50,000 having been made on account of certain overcharges alleged to have been made by appellant against appellee; and that, in fact, he was not indebted to the state in any sum. The third paragraph alleges that appellant was misled and deceived into paying $50,000 as and for the settlement of his debt to the state when he, in fact, owed a much less sum, and that there was an implied promise to return to him any portion thereof not required to meet his just obligations to the state.

There was an answer in two paragraphs, the first being a general denial, and the second a plea of accord and satisfaction. The case was tried by the court, and there was a finding and judgment in favor of appellee. Appellant's motion for a new trial was overruled, and, for a

reversal of this cause, appellant relies upon the insufficiency of the evidence to sustain the decision.

Appellant was an automobile and truck dealer in the city of Indianapolis, and had been selling trucks and truck parts to the appellee through the State Highway Commission. There was no written contract between the parties, but there was an understanding that all goods sold, with the exception of a few items, was to be handled on a discount basis—appellee to have them at list or at list less certain discounts. Appellant purchased on a similar basis. In the usual course of dealing, the highway commission would place an order with appellant, which he would forward to the manufacturer or jobber, and the goods would be billed to appellant at the regular list price, less a discount. Appellant would then bill the goods to the appellee, usually allowing appellee a discount also, and appellant's profit was represented by the difference in these discounts. The volume of business was quite large, amounting, during the time in controversy, to more than $400,000.

The evidence shows that, in the spring of 1924, the State Board of Accounts, while making an investigation of the books of the State Highway Commission and of the state auditor relating to the transactions between said commission and appellant, discovered that certain articles of merchandise had been billed to the state and that the state had made payment therefor at exorbitant prices. As the investigation continued, the irregularities multiplied. The excess charges included duplication of bills, war taxes, billing of articles greatly in excess of the list price, and other gross irregularities, including payment for articles which had never been delivered. The attention of appellant was called to said irregularities and overcharges, and he had frequent conversations with members of the State Board of Accounts. As matters continually grew worse, appellant became uneasy

and expressed a desire to settle the matter, and said that he desired to pay any amount that might be due the state. Appellant made inquiries as to the amount for which he was liable, but was informed that, because of the condition of his books and records, it would not be possible to state the amount until after further investigation. He was later advised that the overcharges would amount to $50,000. Appellant delivered to the state examiner a cashier's check for $50,000, with the understanding that, if he owed more, he would pay it, and that, if he owed less, the difference would be returned to him. The check remained in the possession of the board of accounts until about July 3, 1924, during which time appellant made frequent requests for a statement regarding his indebtedness. At about that time, a report showed a balance due the state of $51,309.44. The following written statement was then presented to and signed by the appellant herein: "Due to the lack of system in the State Garage, we are unable to establish exact deliveries or lack of deliveries, and due to loss of a great part of the invoices on the part of Mr. Schlensker we are unable to substantiate an itemized charge, but having arrived at a per cent. of overcharge by the above method, we, in conference with the State Examiner and the Attorney-General, have accepted the offer of Mr. Schlensker in the sum of $50,000 as settlement in full of the above finding."

Appellant contends that the record shows that threats of criminal prosecution were made, or at least hinted at, and that, by reason of the situation in which appellant was placed, he was excited and worried, and that he is entitled to recover in this action.

No one knew better than appellant the facts and circumstances surrounding the whole of these transactions, because, so far as the investigating committee could find, he had kept all the books which

were kept, and had left unkept all the transactions which were not recorded, so the question of duress, if in the case at all, is not controlling. In *Darling* v. *Hines* (1892), 5 Ind. App. 319, 32 N. E. 109, the court said: "A person who is conscious of being in the right should not decide his case against himself by tamely yielding to the demands of another who is in the wrong and then ask the court to protect him. Especially is this true when the person is under no physical restraint, when no violence is used or threatened against his person, but who stands upon an equal footing with his adversary, with the means of ascertaining the truth easily within his grasp. He must use a reasonable degree of diligence in the premises or abide the result." It seems, in the case at bar, that the appellant realized that he owed the state something, and that the facts and circumstances surrounding the transactions by reason of which he owed the debt were such that he became very anxious for a settlement; that he offered the amount paid as a compromise and settlement of whatever amount was due. It would seem that appellant conceded there was some amount due the state, and that said $50,000 was paid voluntarily by appellant with more knowledge than anyone else as to the true state of facts under which said debt was created.

In *Stotsenburg, Admr.,* v. *Fordice* (1895), 142 Ind. 490, 41 N. E. 313, 810, the court said: "Money paid voluntarily under mistake of fact is recoverable both at law and in equity, unless it be clear that the party making the payment intended to waive all inquiry into the facts. It is not enough that he may have had the means of learning the truth if he had chosen to make inquiry. The only limitation is that he must not waive all inquiry."

In the present case, when the money was paid, the auditor of state gave appellant a quietus which was introduced in evidence, and reads as follows: "No.

26,190. Title Quietus. Amount $50,000. Office of Auditor of State of Indiana, Indianapolis, July 3, 1924. I hereby certify that O. F. Schlensker has filed in my office a receipt of the Treasurer of the State of Indiana for the sum of $50,000 as per itemized statement on file, which statement has been added and the above sum appears to be the true amount due the State of Indiana. Highway Commission fund, State Board of Accounts, report. Robert Bracken, Auditor of State."

Also the following written statement was introduced and read in evidence: "I, O. F. Schlensker, state that after being advised by the State Board of Accounts of overpayments made to me for certain parts furnished by me to the State Highway Commission, I offered to reimburse the state for the overpayments, but was advised to wait until the investigation was completed. Later, after I had delivered my files to the State House, I was informed by the examiners of large amounts of overcharges, and I then made an offer of $50,000 in settlement of the account. This offer was not then accepted, but in a few days after the offer, I, without solicitation, coercion or duress on the part of any one, indorsed to the State of Indiana, a treasurer's check drawn on the Fletcher Trust and Savings Company for $50,000 to be used in settlement of overcharges, freight and express collected, duplicate payments received, and excess war tax collected. This offer was tendered by me as evidence of my good faith to make restitution to the State of Indiana and this statement I sign with full knowledge of the facts, and of my own free will. (Signed) O. F. Schlensker. June 20, 1924."

Testimony of many witnesses, as well as written evidence, was introduced in this case, and, after a careful examination of the same, we find that there is ample evidence to sustain the decision

of the court on the theory that the money paid was a voluntary payment.

Judgment affirmed.